L. C. PUMPHREY et ux., appellees, v. J. A. JONES CONSTRUCTION COMPANY and H. N. ROGERS & SONS COMPANY, appellants.

No. 49642.

(Reported in 94 N.W.2d 737)

FEBRUARY 10, 1959.

Boyd, Walker & Concannon, of Keokuk, for appellants.
McManus & McManus, of Keokuk, for appellees.

THOMPSON, C. J.— The important question in this case is whether the defendants, who were doing certain work in connection with the building of a lock in the Mississippi River under contracts with the United States Government, are entitled to the same immunity from suit as the Government itself. Plaintiffs' petition alleged that in the course of the work the defendants negligently used high explosives in blasting, thereby damaging plaintiffs' property located not far from the site of the construction being carried on. The question of negligence, however, has disappeared from the case, under the doctrine laid down in Watson v. Mississippi River Power Co., 174 Iowa 23, 156 N.W. 188, L. R. A. 1916D 101. It was there held that even without negligence one who uses on his own lands something inherently dangerous and likely to damage his neighbor's property is liable for such damage. It is often referred to as the doctrine of "liability without fault." We may concede, at least for the purposes of this case, that if the defendants are not entitled to the cloak of immunity from suit which the Government has under the same circumstances, which defendants claim in their pleadings, they must respond in damages for the injury to the plaintiffs' property. Although both counts of the plaintiffs' petition rest upon negligence, and the stipulation expressly agrees the defendants were not negligent, the parties have tried the case in the district court and have argued it here upon the theory of "liability without fault" and we so accept it. The trial court found all issues for the plaintiffs, and entered judgment for the stipulated amount of damages.

The case was tried upon an agreed stipulation of facts. It was there agreed that the defendants were constructing New Lock 19 in the river, pursuant to a contract with the United States Government, and that in the course of the work it was necessary to remove earth and rock, by blasting with dynamite. It was further stipulated that the Government was proceeding under authority of the Congress, and that in letting the contract it was performing a governmental function; that is, the improvement of navigation on the Mississippi River; that the defendants were acting as independent contractors, and that they performed as provided in the contract and the plans and specifications thereof, and upon completion the work was ac-

cepted by the Government as being in compliance with the contract. The method used in blasting was submitted to the Government and approved by it, and became a part of the plans and specifications of the contract, and the work of blasting was performed under the inspection of governmental employees, and there was no deviation from the contract in doing said blasting.

The stipulation further agreed that plaintiffs' dwelling was damaged by the blasting, solely by concussions of the atmosphere and vibrations of the earth, without any negligence on the part of the defendants, in the amount of $1600; and that no negligence of the plaintiffs contributed to the injury. Other provisions of the stipulation are not important in our view of the case.

I. The defendants contend that the plaintiffs are not the real parties in interest, because they had made a settlement with an insurance carrier which, defendants think, thereby became entitled to complete subrogation as to their claim. We shall not go into detailed discussion of this question, since we prefer to decide the question upon its substantial merits concerning immunity, further than to say we think defendants' contention unsound on the point first stated.

II. The question of the extension of governmental immunity to an independent contractor who agrees to do certain work required by the sovereign for its purposes is the important and governing one in the case. Here, the United States wished to build a lock for the purpose of improving navigation in the Mississippi River, an undoubted proper governmental activity. It chose to do this by contract with the defendants; and in all their activities they were within the terms of the contract, and the work was approved and accepted by the Government upon its completion. They were in no manner negligent. All these things are determined by the stipulation upon which the case was tried.

But the plaintiffs contend that the governmental immunity from suit should not be extended to independent contractors. They urge that the immunity of the sovereign is at best a survival from the days when it was considered that "the King can do no wrong", and should be strictly limited. They rely much upon the fact that the damage done here was by an inherently

dangerous instrumentality, for which the defendants would ordinarily be liable even without negligence. Cases extending the immunity which do not involve the use of such instrumentalities they think are not in point. The proposition in its narrow aspect is new in Iowa, and is an interesting and important one.

III. We may at the outset eliminate the Federal Tort Claims Act from consideration. The question is referred to considerably in the arguments, but the ultimate conclusion of both parties seems to be that it is not important here. If the Government could be sued under the Act, perhaps the defendants-contractors could also be held to answer. But the Act, as its title indicates, is concerned with torts, and does not extend to cases where the rule of "liability without fault" is the only basis for recovery. Dalehite v. United States, 346 U. S. 15, 44, 45, 73 S. Ct. 956, 972, 97 L. Ed. 1427; Barroll v. United States, 135 F. Supp. 441, 447. Since the plaintiffs in effect concede the nonapplicability of the Act in these words in their brief and argument: "* * * there is perhaps no liability on the part of the Government under the Tort Claims Act for the injuries sustained by appellees * * *", we shall not analyze the question further.

IV. Likewise, we may consider it established, at least so far as our decision here is concerned, that if there had been negligence on the part of the defendants they could claim no share in governmental immunity from suit. Many cases have so held. Grennell v. Cass County, 193 Iowa 697, 702, 187 N.W. 504, 506, 507; Thompson Caldwell Construction Co. v. Young, 4 Cir., 294 F. 145. An exception to the rule prevails in Kentucky (see Schneider v. Cahill, Ky., 127 S.W. 143, 27 L. R. A., N. S., 1009, and Ockerman v. Woodward, 165 Ky. 752, 178 S.W. 1100, L. R. A. 1916A 1005), where even though the contractor is negligent he is granted the immunity of the governmental body with which he contracts. But the Kentucky cases have been generally disapproved and we ourselves have declined to follow them. Grennell v. Cass County, supra, page 702 of 193 Iowa, pages 506, 507 of 187 N.W.

The reason the immunity does not extend to the contractor when he is guilty of negligence is that he is then beyond the terms of his contract. No Government has the right to author-

564

ize an independent contractor to proceed negligently in carrying out his contract with it, and it will not be presumed that it has done so. Hopkins v. Clemson Agricultural College, 221 U. S. 636, 31 S. Ct. 654, 55 L. Ed. 890, 35 L. R. A., N. S., 243. If, in carrying out a lawful contract, he is guilty of negligence he is then not within the procedure he has been authorized to take in his operations, and he can make no claim to immunity. The converse of this proposition will be discussed in the division which follows.

■ V. The narrow question before us is whether the independent contractor is entitled to share the immunity of the sovereign with which he has contracted if he carries out his operations in accordance with the terms of the agreement and without negligence, even though the procedures required by the contract and approved by the Government may result in incidental damage to third persons. The plaintiffs think that he is not, because of the use of a dangerous instrumentality—dynamite—which, although authorized by the contract and approved by the Government inspectors as a method of operation, resulted in injury to their property which would have been compensable under the rule of liability without fault. In supporting their contention they cite many cases. Many of these are negligence cases which clearly come under the principle discussed in Division II above, and do not aid us here. In this category are Grennell v. Cass County, Thompson Caldwell Construction Co. v. Young, both supra, and other cases relied upon to some extent by the plaintiffs. Hopkins v. Clemson Agricultural College, supra, turns upon the holding that the college was not an arm of the State and was doing the work for itself rather than for the Government.

Alabama v. King & Boozer, 314 U. S. 1, 62 S. Ct. 43, 86 L. Ed. 482, 140 A. L. R. 615, also cited and discussed somewhat, concerns the liability of contractors for state taxes, and we do not consider it in point. Lage v. Pottawattamie County, 232 Iowa 944, 5 N.W.2d 161, was an action against the county itself for damages caused by the county's action in making improvements which caused water to overflow upon plaintiff's property. It holds that property may not be so taken to the public use

without just compensation, and has no bearing upon the question of immunity. Questions of eminent domain are involved. So with Great Northern Railway Co. v. State of Washington, 102 Wash. 348, 173 P. 40, L. R. A. 1918E 987. Here the State in building a highway caused damage to plaintiff's adjoining railway line. The case holds the State to be liable because of a provision of its Constitution which said that "No property shall be taken *or damaged* for public or private use without just compensation having been first made * * *." (Italics supplied.) The italicized provision of the Constitution quoted above is a somewhat unusual one, and it was held to require the State to respond for the damages sustained. Both this case and Lage v. Pottawattamie County, supra, turn upon the liabilities of governmental bodies for injuries to or the taking of property without eminent domain proceedings. We are not in the instant case concerned with the liability of the United States, whether through a taking by eminent domain or otherwise. No claim is made against it in this action. Plaintiffs' petition is bottomed entirely upon negligence of the defendants and raises no issue of an unlawful taking without just compensation.

The authority most relied upon by the plaintiffs-appellees is Asheville Construction Co. v. Southern Railway Co., 4 Cir., 19 F.2d 32. Suit was brought by the railway company against a board of highway commissioners and certain contractors with the board to recover damages sustained through blasting operations of the contractors carried on under a contract with the board in constructing a public highway. The blasting caused considerable quantities of rock and dirt to fall upon the railway track, causing damage. We shall assume there is no distinction so far as our consideration here is concerned between "missile" damage, that is, the throwing of debris by blasting, and concussion or vibration damage from the same cause. Each is equally an invasion of the neighboring property.

But a considerable doubt is thrown upon the basis for the court's decision in the Asheville case by the nature of the authorities cited and quoted from by it in supporting its holding that the immunity of the road district, if such it had, did not extend to protect the contractors. The opinion does not make it clear whether the plaintiffs relied upon alleged negligence of

the contractors, although it cites authorities for the proposition that they were liable irrespective of that question. But it gives, as the basis for its holding of nonimmunity of the contractors, cases which were in fact negligence cases; that is, cases in which immunity was denied contractors with governmental bodies because of negligence in carrying out their contracts. There is a somewhat extensive quotation from Thompson Caldwell Construction Co. v. Young, supra, but there the contractor was clearly held to be negligent. Hopkins v. Clemson Agricultural College, supra, turned upon a tort committed by the defendant with the holding that the college was not a part of the state and was acting for itself. St. Peter v. Denison, 58 N. Y. 416, 17 Am. Rep. 258, 11 R. C. L. 684, 685, also cited by the court in the Asheville case, to some extent supports its position, but this case has in effect at least been overruled by the reasoning of the later case of Benner v. Atlantic Dredging Co., 134 N. Y. 156, 31 N.E. 328, 17 L. R. A. 220, 30 Am. St. Rep. 649, to which reference will be made hereinafter. Without here attempting the space-filling task of analyzing each authority cited by the plaintiffs, we think it sufficient to say that the Asheville case is the only one directly in point, and we find it much weakened by the nature of the cases therein cited, quoted from, and relied upon.

The exact question before us here has not previously been decided in Iowa, although our cases are not without some intimations as to the correct result, and some of them come close to the identical point. Thus, in Watson v. Mississippi River Power Co., supra, at page 28 of 174 Iowa, page 190 of 156 N.W., is this language: "* * * they [cases cited] refer to the effect of the use of explosives under the authority of or contract with the general government, * * *; and without conceding what is claimed by way of exemption from liability even in such cases, it may well be admitted that the effect of such circumstances is a question upon which there is room for plausible argument in support of the theory." We said in Grennell v. Cass County, supra, at page 702 of 193 Iowa, page 506 of 187 N.W.: "It may also be conceded, for the purposes of this appeal, that an independent contractor who performs the work undertaken by him according to the terms of his contract and the plans and

specifications furnished for his guidance does not become liable in damages to any third person suffering injury by reason of any mistake, fault, or defect in such plans or specifications." Both this and the Watson case, supra, indicate that the theory of nonliability of the independent contractor where he was guilty of no negligence may be sound.

Two other Iowa cases must be considered at this point. Fitzgibbon v. Western Dredging Co., 141 Iowa 328, 117 N.W. 878, concerned a factual situation in which the defendant dredging company, under a contract with a public drainage district, so operated as to cause water to overflow upon plaintiff's lands and cause damage. We said (page 332 of 141 Iowa, page 880 of 117 N.W.) : "In other words, if the contractor or laborer makes the ditch substantially in accordance with the plan furnished him, taking reasonable care to avoid doing or causing unnecessary injury to adjacent lands, he is not charged with responsibility for injurious effects which naturally follow the authorized improvement." Further, on page 335 of 141 Iowa, page 881 of 117 N.W., is this language: "If a city orders the grading of a street upon a plan the natural effect of which is to arrest the escape of surface water, and set it back upon the property of adjacent owners, the contractor or employee who performs such work according to the plan is not liable for the injuries resulting, unless he contributes thereto by some negligence on his part." Bennett v. Incorporated Town of Mount Vernon, 124 Iowa 537, 100 N.W. 349, is to the same effect. As the plaintiffs point out, the question involved in these cases was one of liability rather than immunity; but the underlying principle is much the same, and the result identical.

We turn now to the converse of the proposition that one who, under contract with the state, carries out the provisions negligently and thereby damages third persons is not entitled to claim the governmental immunity because he has exceeded the terms of his agreement and what he did was his own act rather than that of the sovereign. The opposite of this is, that if the contractor does that which his contract authorizes and requires, without negligence, then he is entitled to claim the same degree of immunity that his governmental authority with

whom he has made his agreement may claim. Benner v. Atlantic Dredging Co., supra, we think is a well-considered opinion directly in point here. The plaintiffs would distinguish this case because they say New York does not recognize the rule of "liability without fault" as applied to damages arising from blasting vibrations and concussions. But the language of the opinion is much broader than that. The court said at page 161 of 134 N. Y., page 329 of 31 N.E.: "It being lawful for the sovereign to exercise its lawful power, it must follow that whatever results from its proper exercise is not unlawful, and if any injury, direct or consequential, results to the individual, he is remediless, except so far as the sovereign gives him a remedy. * * * The defendant having done no more than it was fully authorized to do, and which its duty to the government under the contract required it to do, would be blameless * * *." This case was followed, with quotations at some length, in Nelson v. McKenzie-Hague Co., 192 Minn. 180, 256 N.W. 96, 97 A. L. R. 196, a case in which damages were caused by concussions and vibrations through blasting done by the defendant in constructing a highway under contract with the state. See also Wood v. Foster & Creighton Co., 191 Tenn. 478, 235 S.W.2d 1, and Chattanooga & Tennessee River Power Co. v. Lawson, 139 Tenn. 354, 201 S.W. 165.

The rule is thus stated in 43 Am. Jur., Public Works and Contracts, section 83, pages 827, 828: "As a general rule, a private contractor in the construction of a public improvement under a contract with duly authorized public authorities is not liable for any injury, direct or consequential, to owners of private property that may result as a necessary incident from the prosecution of the work in a proper manner, which would otherwise amount to a nuisance. The theory is that one who contracts with a public body for the performance of public work is entitled to share the immunity of the public body from liability for incidental injuries necessarily involved in the performance of the contract, where he is not guilty of negligence. In other words, when the act or failure to act which causes an injury is one which the contractor was employed to do and the injury results not from a negligent manner of doing the

work, but from the performance thereof, the contractor is entitled to share the immunity from liability which the public enjoys * * *."

See also 69 A. L. R. 489, annotation, and Los Angeles Dredging Co. v. Long Beach, 210 Cal. 348, 291 P. 839, 843, 71 A. L. R. 161.

Yearsley v. W. A. Ross Construction Co., 309 U. S. 18, 20, 60 S. Ct. 413, 414, 84 L. Ed. 554, 557, contains an interesting discussion of the relation of an independent contractor to the Government when work done in accord with the contract and without negligence causes damage. There the defendants had done some work in the Missouri River, under contract with the United States, which caused a change in the current and resulted in washing away a substantial part of the plaintiff's land on the Nebraska shore. Chief Justice Hughes, after pointing out that the contract was authorized and the work done in accordance with it, said:

"In that view, it is clear that if this authority to carry out the project was validly conferred, that is, if what was done was within the constitutional power of Congress, there is no liability on the part of the contractor for executing its will. * * * Where an agent or officer of the Government purporting to act on its behalf has been held to be liable for his conduct causing injury to another, the ground of liability has been found to be either that he exceeded his authority or that it was not validly conferred."

As to the claim that the damage to plaintiff's lands constituted a taking without due process of law and without compensation, the opinion points out that, if that were true, the Government is held to have impliedly promised to pay just compensation, and a remedy is available through the Court of Claims. But in no event, said the learned Chief Justice, is there any ground for holding liable the agent of the Government who is simply acting under the authority conferred upon it. "The action of the agent is 'the act of the government' ", says the opinion, citing authority.

The plaintiffs attempt to distinguish the Yearsley case, supra, and others where the injuries did not result from the use of explosives, by saying there must be a difference in theory

570

when a dangerous instrumentality is or is not used. We doubt the soundness of this distinction. If the contract made by the governmental authority requires the independent contractor to do something in the course of his performance which will or may result in incidental or consequential damage to third persons, it seems that blasting or dredging operations, or others, may alike be potentially harmful and dangerous to plaintiffs or their property. Blasting, necessary to the work to be done under the Government, may cause missile or concussion or vibration damage; but dredging may cause changes in the current of rivers, or the building of dams may cause overflows, also damaging to adjacent property owners or possibly others. In that sense, any of these works may be "dangerous instrumentalities." We see no reason for applying a different rule in explosives cases than in others which in themselves may cause harm without negligence, so far as extension of the principle of governmental immunity to one who contracts to do what the Government requires and does it as agreed and with due care is concerned.

As a matter of fact, if the work required to be done in the public interest will injure the property of third persons to the extent that it amounts to a "taking" without just compensation, the plaintiffs here are not remediless, as Yearsley v. Ross Constr. Co., supra, points out. This question is not before us and we make no pronouncement upon it. We have pointed out that we are not here concerned with questions involving eminent domain or related issues, which are not within the pleadings.

 VI. It is interesting to note, but profitless to consider, that some authorities place the nonliability of the contractor, when he is not himself negligent, upon the doctrine that the cloak of governmental immunity extends to him, and others put it on the ground of nonliability, because he has done only what the Government authorized and no more. We have said that the two theories are very closely related, if not identical. The underlying principle in each is that the State may make improvements for the public good, as in improving navigation, and is not responsible for consequential or incidental damage to private property not amounting to a taking without compensation, in so doing; and that it may do this work through

contracts with others, who have the same immunity or nonliability from suit as the Government itself, if they carry out their agreements as specified. It will be of small profit to the person whose property is injured to know exactly which horn of the dilemma impaled him.

In view of our holding herein, it is necessary to reverse the judgment of the trial court and to remand the case with directions to dismiss plaintiffs' petition.—Reversed and remanded, with directions.

All JUSTICES concur.